**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

**CIVIL ACTION NO. 2:20-CV-138 (WOB-CJS)**

**RYAN P. ESTES, D.M.D.,
P.S., P.S.C.,**                                                             **PLAINTIFF,**

**VS.**                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**CINCINNATI INS. CO.,**                                    **DEFENDANT.**

This is one of many insurance disputes that have arisen in the United States because of government shutdowns caused by the current pandemic. In this matter, a Kentucky-based dental clinic had to cease operating its business in non-emergency situations. The plaintiff is now suing its insurance provider, alleging breach of the insurance contract and bad faith denial of its insurance benefits. (Doc. 9).

Before the Court is the defendant's motion to dismiss. (Doc. 23). The Court previously held a telephonic hearing on this motion on Friday, May 21, 2021. (Doc. 43). The issues being ripe, the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

The plaintiff, Ryan P. Estes, D.M.D., M.S., P.S.C., the Kentucky Professional Service Corporation, owns and operates two dental offices in Kentucky. (Doc. 9 at ¶¶ 5-6). The plaintiff contracted with Cincinnati Insurance Company to indemnify loss or damage to its dental clinics. (*Id.* at ¶ 14).

1

Early in 2020, the SARS-CoV-2 virus ("COVID-19") began spreading rapidly throughout the United States. (*Id.* at ¶ 21). State and local governments acted by issuing executive orders to slow the spread of the virus by limiting patrons from entering many business establishments. (*Id.* at ¶ 22).

On March 6, 2020, Kentucky Governor Andrew Beshear issued Executive Order 2020-215, declaring a state of emergency in Kentucky because of COVID-19. (Doc. 23-10). Part of this Executive Order forced the plaintiff's dental clinics to cease business operation in all non-emergency services for forty-two days—from March 16, 2020, until April 27, 2020. (Doc. 9 at ¶ 24).

Since Cincinnati Insurance failed to indemnify plaintiff for its loss during this time, the plaintiff filed suit, averring: (1) breach of the insurance contract; (2) violation of Kentucky's Unfair Claims Settlement Practices Act; (3) common law bad faith; (4) violation of KRS § 304.12-235; (5) violation of Kentucky's Consumer Protection Act—KRS § 367.110 et seq; and (6) punitive damages. (*Id.* at ¶¶ 42-74).

On September 30, 2020, the plaintiff filed its original complaint in this Court. (Doc. 1). On October 23, 2020, the plaintiff filed its first amended complaint with leave of the Court. (Doc. 9). On December 8, 2020, Cincinnati Insurance moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 23).

2

### *Standard of Review*

To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible upon its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). While the Court construes the complaint in favor of the complaining party, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### *Analysis*

**A.   The Policy Coverage[1]**

Count 1 of the plaintiff's amended complaint alleges a material breach of the insurance contract after Cincinnati Insurance failed to indemnify the plaintiff following its loss of use of its property because of COVID-19 and Governor Beshear's Executive Orders. (Doc. 9 at ¶¶ 42-46). To determine whether coverage exists, the Court must first look at the relevant insurance contract as a matter of law. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000).

The plaintiff relies on the following six provisions of the policy to show it satisfied the requisite conditions precedent for

---

[1] Consideration of the policy is proper at this stage. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999).

recovery under the insurance contract: (1) business income coverage; (2) extra expense coverage; (3) civil authority additional coverage; (4) ingress and egress coverage; (5) dependent property coverage; and (6) sue and labor. (*Id.* at ¶¶ 20, 31, 35, 38, and 41).

Cincinnati Insurance issued policy number ECP 031 43 42 for the policy period from March 12, 2018 to March 12, 2021. (Doc. 23-4 at 2). The plaintiff does not contest that the three pertinent coverage forms from the policy are Building and Personal Property Form (FM 101 05 16), Business Income (and Extra Expense) Coverage Form (FA 213 05 16), and Commercial Property Amendatory Endorsement Form (FCP 201 05 16). (*Id.* at 19-58, 73-78, and 103-111).

Under the Building and Personal Property Coverage Form and the Business Income (and Extra Expense) Coverage Form, the policy provides Business Income and Extra Expenses Coverage. (*Id.* at 36, 103). Both also contain Civil Authority Coverage. (*Id.* at 37, 104). But only the Business Income (and Extra Expense) Coverage Form provides Ingress and Egress Coverage. (*Id.* at 106). The Commercial Property Amendatory Endorsement Form provides coverage for Business Income and Dependent Property. (*Id.* at 74-75). The Sue and Labor provision is covered under the "Duties in the Event of Loss or Damage" in the policy. (*Id.* at 48-49).

Within each of these coverages listed in plaintiff's amended complaint, the policy requires there to be a Covered Cause of Loss.

4

Covered Causes of Loss is defined as a "***direct 'loss'*** unless the 'loss' is excluded or limited in this Coverage Part."[2] (*Id.* at 24, 104). "Loss" is defined as "accidental *physical* loss or accidental *physical* damage." (*Id.* at 56, 111) (emphasis added). Together, the following coverages require the plaintiff to show a Covered Cause of Loss, which requires either a "direct physical loss" or "direct physical damage."

Under the Business Income Coverage, the insured must show that a "suspension" was "caused by ***direct 'loss'*** to property at a 'premises' caused by or resulting from any Covered Cause of Loss." (*Id.* at 36, 103) (emphasis added).

Next, Extra Expense coverage also requires the income expenses incurred to stem from a "***direct 'loss'*** to the property caused by or resulting from a Covered Cause of Loss." (*Id.* at 37, 103-04) (emphasis added).

Civil Authority extends coverage for loss of Business Income and Extra Expenses sustained by the action of a civil authority.

---

[2] Also relevant to the coverage provisions, the policy defines "Period of restoration" as the period of time that begins "after the time of 'direct loss'," and ends on the earlier of "[t]he date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed" or "[t]he date when business is resumed at a new permanent location." (Doc. 23-4 at 57-58). "Period of restoration" is limited to this period described and "does not include any increased period required due to the enforcement or compliance with any ordinance or law that: . . . (2) [r]equires any insured or other to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to assess the effects of 'pollutants'." (*Id.* at 58). "Suspension" is defined as "[t]he slowdown or cessation of your business activities; and [t]hat part of the 'premises' is rendered untenantable." (*Id.* at 59).

5

(*Id.* at 37, 104). This coverage requires a **direct physical loss** to property other than at the plaintiff's premises. (*Id.*) Moreover, the insured may recover damages for Business Income and Extra Expenses "caused by action of civil authority that prohibits access to the" plaintiff's premises, if the following apply:

> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of damage; and
>
> (b) The action of civil authority is taken in response to dangerous *physical* conditions resulting from damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. (emphasis added).

(*Id.*)

Ingress and Egress Coverage also extends coverage to Business Income and Extra Expenses sustained "by the prevention of existing ingress or egress at a premises shown in the Declarations due to **direct 'loss'** by a Covered Cause of Loss at a location contiguous to such 'premises'." (*Id.* at 107) (emphasis added).

Business Income from Dependent Properties states that the defendant "will pay for the actual loss of 'Business Income' [plaintiff] sustain[ed] due to the necessary 'suspension' of [plaintiff's] 'operations during the 'period of restoration'. The 'suspension' must be caused by **direct 'loss'** to the 'dependent property' caused by or resulting from any Covered Cause of Loss." (*Id.* at 74-75) (emphasis added).

6

Finally, the Sue and Labor coverage condition requires the insured to take reasonable steps to prevent further damage and keep records of expenses incurred to the property. (*Id.* at 48-49). "However, in no event will [the defendant] pay for any subsequent **'loss'** resulting from a cause of loss that is not a **Covered Cause of Loss**." (*Id.* at 49) (emphasis added).

## B. The Plaintiff Cannot Show A "Direct Physical Loss" Under The Policy

The parties do not contest that Kentucky's substantive law governs this contract dispute. *Rutherford v. Columbia Gas*, 575 F.3d 616, 623 (6th Cir. 2009). Under Kentucky law, the burden is on the insured to establish coverage. *N. Am. Accident Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935).

Because each coverage provision requires a direct physical loss or damage to the property, the pivotal issue is whether plaintiff meets its burden by showing its dental clinics incurred a direct physical loss (as the plaintiff argues) to trigger the coverage provisions above.

In the absence of ambiguities, the terms must be enforced as written. *McMullin v. McMullin*, 338 S.W.3d 315, 320 (Ky. Ct. App. 2011) (citing *Whitlow v. Whitlow*, 267 S.W.2d 739, 740 (Ky. 1954)). "A contractual provision is ambiguous if the provision is susceptible to multiple or inconsistent interpretations." *Id.* Contractual terms are assigned their ordinary meaning, *Frear v.*

*P.T.A. Industry, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003), and courts are "simply unwilling to torture words to import ambiguity into a contract where the ordinary meaning leaves no room for ambiguity. *First Home, LLC v. Crown Communications, Inc.*, Case No. 2010-CA-1701-MR, 2012 WL 95560, at *5 (Ky. Ct. App. March 15, 2012) (citation omitted).

Cincinnati Insurance argues that a "direct physical loss" requires an actual, tangible, permanent, physical alteration of the property, not a purely economic loss related to the COVID-19 virus. (Doc. 23 at 4).[3]

The plaintiff believes it has alleged sufficient facts because it lost the use of its properties due to COVID-19 and Governor Beshear's Executive Order. (Doc. 9 at ¶ 25). This "loss of use" theory, the plaintiff argues, constitutes an "accidental physical loss" under its insurance policy because the policy is written in the disjunctive. (Doc. 29 at 1-2). Because the term "physical loss" is not defined in the policy, the plaintiff argues

---

[3] This is the majority view. *See e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, Case No. 5:20-CV-461, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020) (granting the defendant's motion to dismiss, holding that barbershop businesses that were deemed non-exempt and non-essential under the executive orders could not state a claim for "accidental direct physical loss to covered property" because there was no tangible destruction to the property with COVID-19); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, Case No. 20-CV-2160, 488 F.Supp.3d 690, 694 (N.D. Ill. 2020) (granting the defendant's motion to dismiss because "[t]he coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property"); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, Case No. 4:20-CV-222, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020) (same); *Zwillo v. Lexington Ins. Co.*, Case No. 4:20-CV-339, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) (discussing the minority view, but holding economic injury alone is insufficient to constitute a direct physical loss under the policy).

that the Court should look to the dictionary definition of the word "loss" for its plain meaning, which is defined as "the act of losing possession: DEPRIVATION." (*Id.* at 1).[4]

As is discussed above, the word "loss" is defined in the policy to mean "accidental physical loss or accidental physical damage." (Doc. 23-4 at 56, 111). Furthermore, the Covered Cause of Loss expands the definition of "loss" to mean a direct loss unless it is excluded under the policy.[5] (*Id.* at 24, 104). Together, the policy requires a direct physical loss or damage to the property, but the term "direct physical loss" (or damage) is not defined.

To help ascertain the parameters of this term, both parties analogize and distinguish among numerous cases interpreting the requirements of a direct physical loss to commercial businesses in the general context and in light of the COVID-19 pandemic. (Docs. 23, 29). This includes a final set of supplemental authorities the Court permitted the parties to file after oral argument. (Docs. 43-45).

---

[4] This has been the minority view. *Studio 417, Inc. et al. v. Cincinnati Ins. Co.*, Case No. 20-CV-3127, 478 F.Supp.3d 794 (W.D. Mo. Aug. 12, 2020); *K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*, Case No. 20-CV-437, 2020 WL 6483108 (W.D. Mo. Aug. 12, 2020); *Blue Springs Dental Care, LLC et al. v. Owners Ins. Co.*, Case No. 20-CV-383, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020). The plaintiff relies on additional authority in its supplemental authority. (Doc. 44). Of note, the plaintiff cites *In re: Society Insurance Company COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2964, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021), denying the defendants' motion to dismiss because the government shutdown could satisfy the physical loss requirement.

[5] It is undisputed that COVID-19 is not listed as an exclusion under the policy. However, exclusions do not come into play unless there is coverage first. *Kemper Nat. Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (explaining the purpose of an exclusion "is to restrict and shape the coverage otherwise afforded").

But this issue, as Cincinnati Insurance noted in its second notice of supplemental authority, was recently considered in the Western District of Kentucky. (Doc. 37).

In *Bluegrass Oral Health Center, PLLC v. The Cincinnati Insurance Company*, Case No. 1:20-CV-120, 2021 WL 1069038 at *1-2 (W.D. Ky. March 18, 2021), the court similarly noted the plethora of caselaw the parties relied on to define direct physical loss. The court looked at the minority view set forth in *Studio 417, Inc.*, 478 F. Supp.3d 794, which considered identical language from the defendant's insurance policy.[6] *Id.* at 2.

The court noted that a Missouri district court found that since direct physical loss and direct physical damage were not defined under the policy, it would use the dictionary definition of the word loss. *Id.* at *2 (citing *Studio 417*, 478 F. Supp.3d at 800). *Studio 417* ultimately found the dictionary definition of loss to be "the act of losing possession" and held that the plaintiff alleged a "direct physical loss" because the plaintiff lost possession of its premises.[7] *Id.*

---

[6] The same language is at issue here.
[7] As discussed *supra* in footnote 3, another district court in the Western District of Missouri was unpersuaded by the minority view. *See Zwillo*, 2020 WL 7137110 at *8 (interpreting the same policy language, the court found that the coverage provisions the plaintiffs relied on unambiguously did not cover executive orders closing businesses because of COVID-19. As such, the court noted its conflict with *Studio 417* and opted not to follow it). Similarly, courts in the Northern District of Illinois expressly disagreed with the minority view set forth in *In re Society*. *Chief of Staff LLC v. Hiscox Ins. Co.*, Case No. 20-CV-3169, 2021 WL 1208969, at *4 (N.D. Ill. Mar. 31, 2021) (holding that the disagreement among courts in the Northern District of Illinois did not render the policy ambiguous as *In re Society* found).

10

Judge Stivers opted not to follow the holding in *Studio 417* for two reasons. *Id.* First, unlike *Studio 417*, the plaintiff made no allegation that its premises were contaminated by COVID-19. *Id.* The same is true here, as the plaintiff only alleges that it lost use of both properties because of Governor Beshear's Executive Order. (Doc. 9 at ¶¶ 23-24).

Second, the court agreed with the decision to use a dictionary to discern the ordinary meaning of "loss", but it determined *Studio 417* used a secondary definition to reach its conclusion. *Id.* Judge Stivers instead used *Merriam-Webster's* primary definition of loss, which it found to better harmonize the policy language. *Merriam-Webster* defined loss as "destruction" or "ruin". *Id.* (citing https://www.merriam-webster.com/dictionary/loss) (last visited May 23, 2021).

This, the court found, would mean destruction or ruin produced by forces or operations of physics, meaning the policy "would extend to the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property." *Id.* (citation omitted). "This is a far more reasonable construction than interpreting 'direct physical loss' to mean 'direct physical loss of use', which frankly makes no sense." *Id.*

As this latter point suggests, it is important to consider how the words work together. To be clear, the policy does not cover a "direct loss" in general. If it did, the definition could broadly

11

cover a loss like *Studio 417* or narrowly like *Bluegrass Oral*—creating an obvious ambiguity to be resolved in the plaintiff's favor.

Instead, it covers a "direct *physical* loss", which suggests that the plaintiff must allege facts that show it suffered from a direct and a *physical* loss or damage to the property. That is because the words "direct physical" modify the words "loss" and "damage". *See e.g., System Optics, Inc. v. Twin City Fire Ins. Co.*, Case No. 5:20-CV-1072, 2021 WL 2075501, at *9 (N.D. Ohio May 24, 2021) (stating that a "'direct physical loss' requires some actual harm to the structure rendering it uninhabitable or unusable" not a "superficial or intangible effect of a government closure due to the spread of COVID-19," which represents a purely economic loss that does not trigger coverage").

While a minority of courts agree with the plaintiff's theory, the reasoning set forth in those opinions is unpersuasive. To agree with the minority view would mean that the term "direct physical loss or direct physical damage" was ambiguous.

For example, in *Elegant Massage v. State Farm*, Case No. 2:20-CV-265, 2020 WL 7249624, at *10 (E.D. Va. Dec. 9, 2020), the court found that "while the Light Stream Spa was not structurally damaged, it is plausible that plaintiffs experienced a direct physical loss when the property was deemed uninhabitable, inassessable, and dangerous to use by the Executive Orders because

12

of the risk for spreading COVID-19, an invisible but highly lethal virus." That is not the case here.

Plaintiff's complaint concedes that it was not prohibited entirely from entering its property to perform emergency procedures. *See* (Doc. 9 at ¶ 24) ("from March 16, 2020, until April 27, 2020, Plaintiff was prohibited from performing **non-emergency services**") (emphasis added).

By contrast, no government order required the plaintiff to close as it was permitted to perform emergency procedures. Moreover, COVID-19 virus harms people, not property. *Seoul Taco Holdings, LLC v. The Cincinnati Ins. Co.*, Case No. 4:20-CV-1249, 2021 WL 1889866, at *6 (E.D. Mo. May 11, 2021) ("even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated").

In sum, the plaintiff's argument that both physical and purely economic losses are covered under the policy agreement is clearly misplaced.[8] *See e.g., Sandy Point Dental*, 488 F.Supp.3d at 694

---

[8] Plaintiff's "reasonable expectation" theory also fails because it requires "actual ambiguities, not fanciful ones," to trigger its application. *Liberty Corp. Capital Ltd. v. Security Safe Outlet, Inc.*, 937 F.Supp.2d 891, 906) (E.D. Ky. 2013). Moreover, the Business Income and Extra Expense Coverage is limited to a "period of restoration". This definition provides additional context to the meaning of direct physical loss. According to its definition, coverage begins when there is a direct loss and ends at the earlier of (1) when the premises is repaired, rebuilt or replaced or (2) the business is resumed at a new permanent location. (Doc. 23-4 at 56-57, 111). This definition "contemplates physical damage to the insured premises as opposed to loss of use of it." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F.Supp.3d 323, 332 (S.D. N.Y. Apr. 24, 2014) (citation omitted).

(granting the defendant's motion to dismiss because the plaintiff's complaint did not allege that COVID-19 altered the dental clinic physically, as required by words "direct" and "physical" modifying the word loss).

**C.     Application To The Policy**

The plaintiff's amended complaint alleges that it suffered a financial loss because of the shutdown under Governor Beshear's Executive Order in response to the ongoing pandemic. (Doc. 9). However, the coverage provisions require a showing of physical alteration to the properties.

The Business Income and Extra Expense Coverages fail because the plaintiff has not (and cannot) allege that the suspension of non-emergency procedures was a "***direct loss***" to the property. (Doc. 23-4 at 36-37, 103-04). Again, the plaintiff's theory is purely economic and does not meet the policy definition of "direct physical loss."

The Business Income from Dependent Property Coverage requires a necessary suspension of the insured's business as a result of a ***direct physical loss*** to a "dependent property" resulting from a Covered Cause of Loss. (*Id.* at 74-75). Dependent property is defined as property that is operated by others whom the insured depends on to deliver material or services to it, accept its products or services, manufacture products for delivery to its customers, or attract customers to its business. (*Id.* at 75).

While plaintiff's complaint alleges conclusively that it suffered "a loss of materials, services, and lack of customers as a result of COVID-19 and the government orders restricting businesses and customers", (Doc. 9 at ¶ 37), the plaintiff does not allege that the dependent properties suffered a "direct physical loss" as defined by the policy. *See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) ("To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless").

Plaintiff's Ingress and Egress Coverage argument similarly fails because it requires both a direct physical loss at a contiguous property and the prevention of access to the insured's property because of that physical loss. (Doc. 23-4 at 106). Plaintiff's complaint alleges "[u]pon information and belief, persons with COVID-19 have breathed, touched surfaces, spread the virus through the air and on surfaces and suffered from the virus at property contiguous to Plaintiff's property." (Doc. 9 at ¶ 33). This claim fails because the facts do not allege a direct a ***direct physical loss*** at any location, and the policy unambiguously states that Ingress and Egress Coverage "does not apply if ingress or egress from the 'premises' is prohibited by civil authority." (Doc. 23-4 at 106).

15

The Sue and Labor coverage claim fails because there is no covered loss. Like Ingress and Egress Coverage, the Sue and Labor Coverage unambiguously states that the defendant will not "pay for any subsequent 'loss' resulting from a cause of loss that is not a Covered Cause of Loss." (*Id.* at 49)

Finally, the plaintiff's Civil Authority Coverage claim fails because the policy's coverage only applies to a Covered Cause of Loss, meaning a direct physical loss to property "other than Covered Property at a 'premises'". (*Id.* at 37, 104). Premises is defined as the "Locations and Buildings described in the Declarations." (*Id.* at 58).

The plaintiff attempts to plead this requirement by alleging "Persons with COVID-19 have breathed, touched surfaces, spread the virus through the air and on surfaces, suffered from the virus, and died from the virus at other properties. As a result of this loss to other properties, Plaintiff was denied access to the property for the purpose of non-emergency dental services." (Doc. 9 at ¶¶ 29-30).

Regardless, the economic loss from the Executive Order is not a Covered Cause of Loss because it is not a tangible loss to its property or any other. *See Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*, Case No. 20-CV-50284, 2021 WL 346423, at *5 (N.D. Ill. Jan. 19, 2021) ("Plaintiff's Business Income loss is not covered under the Civil Authority coverage provisions of the

16

policy at issue in this case because the Governor's Orders did not prohibit access to plaintiff's dental office").

In sum, plaintiff's breach of contract claim fails to plead a direct physical loss. The Court thus concludes that the plaintiff has failed to establish a breach of contract under the insurance policy.[9]

Thus, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that the defendant's motion to dismiss (Doc. 23) be, and is hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 4th day of June 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

---

[9] Likewise, plaintiff's remaining non-contractual claims also fail because they are based on allegations of bad faith for not providing coverage. (Doc. 9 at 7-10). "[A] single test under Kentucky law exists for the merits of bad faith claims, whether brought by a first- or third-party claimant or brought under common law statute." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). Under Kentucky law, an insured must prove three elements to establish bad faith: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Here, as explained *supra*, the plaintiff cannot establish the first element. Therefore, the defendant's motion to dismiss is well taken on all remaining counts.